## REMMER *v.* UNITED STATES.

No. 156.   Argued January 18, 1956.—Decided March 5, 1956.

*Leslie C. Gillen* argued the cause for petitioner.   With him on the brief were *John R. Golden* and *Spurgeon Avakian.*

*John R. Benney* argued the cause for the United States. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Holland* and *Joseph M. Howard.*

MR. JUSTICE MINTON delivered the opinion of the Court.

This case is here for the third time.   Petitioner was convicted on four counts of wilfully attempting to evade and defeat federal income taxes.   When this case was first here we knew nothing about the facts concerning the phase of the case now before us.   It was alleged

in the petitioner's motion and affidavits supporting his motion for a new trial that during the trial one juror, Smith, had been approached by one Satterly, an outsider, with a suggestion that the juror could make some easy money if he would make a deal with petitioner Remmer. It was further alleged by the petitioner that the juror reported the matter to the trial judge, who in turn reported it to the district attorney, who, with the judge's approval, called in the Federal Bureau of Investigation—all of which was unknown to the petitioner until he read about it in the newspaper after the jury had returned its verdict finding him guilty. The Government did not deny these allegations. We sent the case back to the District Court with directions to hold a hearing, with the petitioner and counsel present, to determine from the facts whether or not communication with the juror by the outsider and the events that followed were prejudicial and, therefore, harmful to the petitioner, and, if so, to grant a new trial. 347 U. S. 227. On remand, the District Court held a hearing and found the incidents to be free of harm. 122 F. Supp. 673. Thereafter, this Court remanded the entire record to the Court of Appeals for the Ninth Circuit to consider the whole case in the light of our recent net-worth decisions. 348 U. S. 904. The Court of Appeals reviewed the whole record and affirmed the petitioner's conviction in a *per curiam* opinion. 222 F. 2d 720.

The case is here again on certiorari, limited to the question of the effect of the extraneous communications with the juror upon the petitioner's right to a fair trial. 350 U. S. 820. The District Court read our opinion and mandate to mean that "the incident complained of" to be inquired into at the hearing was the purpose and effect of the F. B. I. investigation. The District Court found that the purpose of the F. B. I. investigation was not to examine Smith's conduct, but rather to determine whether

Satterly had committed an offense. The court further found that the F. B. I. agent's discussion with Smith had "no effect whatever upon the judgment, or the integrity or state of mind" of Smith, whom the court found to be a "forthright and honest man." On the basis of these two findings, the court concluded:

> "Consequently, the court finds that 'the incident complained of' was entirely harmless so far as the petitioner was concerned and did not have the slightest bearing upon the integrity of the verdict nor the state of mind of the foreman of the jury, or any of the members of the jury. Thus any presumption of prejudice is conclusively dispelled. . . ."

The District Court's limit of our mandate, it seems to us, is hardly warranted by the language of the opinion, even though the language might well have been more explicit. It was our intention that the entire picture should be explored and the incident complained of and to be examined included Satterly's communication with the juror and the impact thereof upon him then, immediately thereafter, and during the trial, taken together with the fact that the F. B. I. was investigating a circumstance involving the juror and the fact that the juror never knew all during the balance of the trial what the outcome of that investigation was. Thus we stated: "In a criminal case, any . private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court . . . with full knowledge of the parties." 347 U. S., at 229. We also pointed out that the record we had before us did not reflect what in fact transpired, "or whether the incidents that may have occurred were harmful or harmless." *Ibid.* It was the paucity of information relating to the entire situation

coupled with the presumption which attaches to the kind of facts alleged by petitioner which, in our view, made manifest the need for a full hearing. Nevertheless, there is sufficient evidence in the record relating to the total situation, including both the Satterly and the F. B. I. contacts, which makes it unnecessary to remand the case for further consideration. We will consider the evidence free from what we think are the unduly narrow limits of the question as viewed by the District Court.

The evidence shows that three weeks after the trial started, juror Smith, who is a real estate and insurance broker, was visited in his home by Satterly and his wife about an insurance policy. Satterly had been employed in a gambling house in Nevada as a dealer of craps. The petitioner was or had been engaged in the operation of gambling houses in Nevada. The Satterlys had met the Smiths socially at a hunting lodge. Smith and Satterly seated themselves in one end of a large room and their wives were seated in the other end of the room, a convenient arrangement if an approach was to be made. Satterly made substantially the following remark: "I know Bones Remmer very well. He sold Cal-Neva for $850,000 and really got about $300,000 under the table which he daresn't touch. Why don't you make a deal with him?" Smith vigorously reminded Satterly that he was on the jury and that he could not talk about the case. Nothing more was said. Smith was disturbed. As he later testified, "I always felt, whether Mr. Satterly said it in so many words or not, I always felt that money was involved; otherwise why would any question be put to me." So disturbed was Smith that he told the trial judge about it. The judge's reaction, at least as he manifested it to Smith, was that the Satterly conversation should be regarded as a joke. But the judge related the incident to the district attorney and they decided to refer the matter to the Federal Bureau of Investigation. Shortly there-

after, during a recess, an F. B. I. agent called on Smith at his place of business. Smith testified that the agent explained the purpose of this visit as follows: "He told me that he had been instructed to come and interview me relative to this conversation I had with Mr. Satterly. . . . To check and see whether there was anything to this or not." On direct examination the agent testified: "I told him I had been requested to conduct an investigation relating to his talk with Mr. Satterly and the possibility of improper approach." In reply to questions put by the District Court, the agent testified that he had explained to Smith that the purpose of his investigation was to examine Satterly's conduct. Satterly was never interviewed by the F. B. I. during its investigation. It was not until a month after the trial had ended that the Government determined that further investigation or criminal prosecution was unwarranted.

Driving home after the trial with two other jurors, Smith mentioned that there was some question as to whether he had been approached during the trial and that he had reported the incident to the trial judge. He thanked one of the jurors on dropping her at her home, "because I have been under a terrific pressure . . . Sometime I will discuss it."

We think this evidence, covering the total picture, reveals such a state of facts that neither Mr. Smith nor anyone else could say that he was not affected in his freedom of action as a juror. From Smith's testimony it is quite evident that he was a disturbed and troubled man from the date of the Satterly contact until after the trial. Proper concern for protecting and preserving the integrity of our jury system dictates against our speculating that the F. B. I. agent's interview with Smith, whatever the Government may have understood its purpose to be, dispersed the cloud created by Satterly's communication. As he sat on the jury for the remainder of the long trial

and as he cast his ballot, Smith was never aware of the Government's interpretation of the events to which he, however unwillingly, had become a party. He had been subjected to extraneous influences to which no juror should be subjected, for it is the law's objective to guard jealously the sanctity of the jury's right to operate as freely as possible from outside unauthorized intrusions purposefully made.

The unduly restrictive interpretation of the question by the District Court had the effect of diluting the force of all the other facts and circumstances in the case that may have influenced and disturbed Smith in the untrammeled exercise of his judgment as a juror. We hold that on a consideration of all the evidence uninfluenced by the District Court's narrow construction of the incident complained of, petitioner is entitled to a new trial.

The Court of Appeals' judgment is vacated and the case is remanded to the District Court with directions to grant a new trial.

*It is so ordered.*

MR. CHIEF JUSTICE WARREN and MR. JUSTICE HARLAN took no part in the consideration or decision of this case.