**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ruane BRANDE, Defendant–Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**Carmen Pharr, Defendant–Appellant.**

**Nos. 01–50537, 01–50538.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2003.

Filed June 2, 2003.

Shakti Murthy, Seal Beach, CA, for defendant-appellant, Ruane Brande.

Carlo Spiga, Carlo Spiga Law Offices, Sherman Oaks, CA, Jerald Brainin, Jerald Brainin Law Offices, Los Angeles, CA, for defendant-appellant, Carmen Pharr.

Michael J. Raphael, Assistant United States Attorney, Los Angeles, CA, for plaintiff-appellee, United States.

Before BROWNING, PREGERSON, and REINHARDT, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge.

After an eight-day trial, Ruane Brande and Carmen Pharr were convicted of one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of aiding and abetting loan fraud, in violation of 18 U.S.C. §§ 2(a) and 1014. Brande was also convicted of one count of mail fraud, in violation of 18 U.S.C. § 1341, a charge of which Pharr was acquitted. The defendants appeal. We address here their argument that the district court was required to hold an evidentiary hearing to determine whether the jury was impartial. We remand for a hearing.

## Background

About two weeks after the jury returned its verdict, Robbie Britton, one of the jurors, telephoned the FBI office in Santa Ana to ask what sentences the defendants had received. During the course of that call, Britton reported to an FBI agent that he thought that the case against Brande was a "slam dunk" but that during the trial another male juror was overheard saying, as the FBI agent later reported it, "something to the effect of he was unable to find anyone guilty because of his religious beliefs." Britton said that he and a female juror, believing it was their duty to inform the court, told either a court clerk or court intern about this statement by the male juror. Britton told the FBI agent that the clerk or intern then approached that juror and asked him whether he would be unable to find a defendant guilty of a crime. The juror responded that he would not be unable to do so.

Later on the day of Britton's call to the FBI, the FBI agent reported the conversation by telephone to David Lavine, the Assistant U.S. Attorney who had tried the case. About five weeks later the agent provided a written report to Lavine, who thereupon forwarded a copy to the defendants' lawyers. The defendants assert, and the government does not deny, that they had not been informed of the conversation before then.

Defense counsel brought the matter of the jury contact to the attention of the district court more than five months later, orally, on the date set for sentencing. In the interim, he told the court, his office had hired an investigator, who after considerable difficulty had learned the juror's name and had spoken with him by telephone. Counsel suggested that the court hold an evidentiary hearing on the matter. He explained that he had not come to the court earlier because of the difficulty in finding the juror. He stated that the juror had a common name that was shared by many people in the juror pool. The attorney also said that he had "contacted the clerk" a few days before the sentencing hearing in order to bring the matter to the court's attention, and that he and the clerk "had set a time available," but that he then "couldn't get concurrence from Mr. Lavine to waive the time constraints ....[a]nd therefore did not file [a] motion, as [he] would have chosen to do." Brande's attorney now asserts that the defense had been informed—he does not say by whom—that it would be appropriate to raise the issue

of the evidentiary hearing on the day of sentencing.

After hearing from defense counsel, the court immediately proceeded to sentencing, refusing to hold an evidentiary hearing, because the defense had waited so long before bringing the matter to its attention. The defendants appeal, arguing that the district court was required to hold an evidentiary hearing. We agree. We therefore remand with instructions that the district court hold an evidentiary hearing to determine whether the contact between the juror and the court employee requires it to hold a new trial.[1]

**Analysis**

In *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954) (*Remmer I*), the Supreme Court held that "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly with a juror during a trial is, for obvious reason, deemed presumptively prejudicial, if not made in the pursuance of known rules of the court and the instructions and directions of the court, with full knowledge of the parties." *Id.* at 229, 74 S.Ct. 450. The alleged improper contact in *Remmer* was jury tampering of the clearest sort—a bribe offered to a juror in exchange for a favorable outcome for the defendant. *Id.* at 228, 74 S.Ct. 450. In such a case, the district judge is required to hold an evidentiary hearing to determine "what transpired, the impact on the jurors, and whether or not it was prejudicial," *United States v. Angulo*, 4 F.3d 843, 847 (9th Cir.1993); *see also Remmer I*, 347 U.S. at 230, 74 S.Ct. 450 (ordering evidentiary hearing).

Since *Remmer* it has become clear that, whereas concerns of jury tampering always mandate an evidentiary hearing, *see, e.g., United States v. Jackson*, 209 F.3d 1103, 1105 (9th Cir.2000) (requiring evidentiary hearing where during trial juror received threatening call that he *may* have believed to have come from a defendant); *United States v. Dutkel*, 192 F.3d 893, 897 (9th Cir.1999) (requiring evidentiary hearing although intrusion was made on behalf of a different defendant), no evidentiary hearing is required in instances of "more prosaic kinds" of misconduct or irregularities, *id.* at 895, "cases in which ... the facts have shown clearly that the alleged misconduct or bias simply could not have affected the verdict." *Angulo*, 4 F.3d 843, 848 n. 7; *see, e.g., United States v. Olano*, 507 U.S. 725, 740, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (holding that mere presence of alternate jurors in jury room during deliberation was not prejudicial).

The government notes that the jury intrusion alleged in the present case was not jury tampering, at least not in the narrow sense of "an effort to influence the jury's verdict by threatening or offering inducements to one or more of the jurors," *Dutkel*, 192 F.3d at 895, and argues that therefore no hearing was required. However, not every improper contact is either tampering, on the one hand, or innocuous, on the other. For example, in *Parker v. Gladden*, the Supreme Court held that the impartiality of the jury was tainted when a court bailiff expressed to two jurors his personal opinion that the defendant was guilty. 385 U.S. 363, 363–64, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); *see also Olano*, 507 U.S. at 738, 113 S.Ct. 1770 (citing *Parker*).

To determine whether an evidentiary hearing must be held, "the court must consider the content of the allegations, the

---

1. Although the defendants in their briefs demand a new trial, at oral argument they requested in the alternative that we order an evidentiary hearing. A specific request for a hearing is not, in any event, necessary. *See United States v. Dutkel*, 192 F.3d 893, 899 (9th Cir.1999).

seriousness of the alleged misconduct or bias, and the credibility of the source." *Id.* at 847; *accord United States v. Saya,* 247 F.3d 929, 935 (9th Cir.2001). If these factors warrant holding a hearing, a hearing should be held unless the court already knows "the exact scope and nature" of the improper contact. *Saya,* 247 F.3d at 935 (internal quotation marks omitted).

Weighing these considerations, we conclude that we must remand to the district court for an evidentiary hearing. The credibility of the allegations is not in doubt, only their seriousness. While the government seeks to characterize the misconduct as entirely innocuous, Brande calls it "an attempt to identify a 'hold out' juror," and asserts that it " 'may have influenced and disturbed [the juror] in the untrammeled exercise of his judgment as a juror.'" (quoting *Remmer v. United States,* 350 U.S. 377, 382, 76 S.Ct. 425, 100 L.Ed. 435 (1956) (*Remmer II* )). Three factors lead to the conclusion that the allegations are serious enough to warrant a hearing. First, the conduct was between a juror and court personnel. The defendants are correct that a juror is more susceptible to improper influence from a court officer than from spectators or parties to the case. *See Parker v. Gladden,* 385 U.S. 363, 365, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966) (per curiam). Second, the communication concerned the central duty of a juror—deciding guilt—and may have had the effect, intended or not, of influencing the juror's exercise of that duty. *See United States v. Plunk,* 153 F.3d 1011, 1023 (9th Cir.1998) (distinguishing "substantive contact" from contact related to providing for physical needs of jurors). Third, because the ex parte contact came to light only after the verdict, there was no opportunity for a curative instruction. *Cf. United States v. Sarkisian,* 197 F.3d at 981 (9th Cir.1999) (citing adequate curative instruction in finding jury not tainted);

*United States v. English,* 25 C.C.P.A. 770, 92 F.3d 909, 914 (9th Cir.1996) (same).

▪ The government may turn out to be correct that the communication was not prejudicial. Not every improper contact between court personnel and a juror is prejudicial, even where it concerns matters related to the case. *See Rushen v. Spain,* 464 U.S. 114, 116–18, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (per curiam) (holding ex parte communication to be harmless error where juror approached judge to tell him of her childhood friendship with a victim of defendant's associate). In this instance, however, it is impossible to know whether there was prejudice without an evidentiary hearing. *Cf. Jackson,* 209 F.3d at 1110 (remanding for hearing because it was not possible on the basis of the existing record to determine whether there was prejudice). The record does not show in enough detail what words were spoken by the court officer to the juror in question, or what reaction those words produced. The relevant material the record does contain—the report prepared by the F.B.I. agent and the transcript of defense counsel's truncated attempt to interest the district court in the matter—is enough to raise a substantial concern but too little to establish whether prejudice resulted. A hearing is therefore required.

▪ The government argues that, even if the ex parte juror contact did justify an evidentiary hearing, we should decline to order one because the defendants did not raise the issue until five months after learning of Britton's telephone call to the FBI, and because no proper motion was filed. The defendants counter by pointing out that, although Lavine, the Assistant U.S. Attorney who prosecuted the case, was informed of Britton's call on the day Britton made it, Lavine allowed five weeks to pass before contacting defendants' counsel. However, the issue before us is not

whether either or both counsel were negligent, but whether the district court had an obligation to conduct an inquiry once the information became known to it prior to the entry of the judgment of conviction.

■ As the Supreme Court has stated on more than one occasion, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Olano,* 507 U.S. at 738, 113 S.Ct. 1770 (quoting *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)). It is thus a special duty of the district court to ensure the impartiality of the jury. This duty is heightened when a potential breach of impartiality may have resulted from the act of a court employee. Although the parties may—and should—aid the court in ensuring a fair trial by calling attention to any irregularities promptly and in a proper manner, the failure of the parties to do so does not, in itself, relieve the court of its obligations.

■ We also note that a jury is impartial only if its every member is impartial. "The bias or prejudice of even a single juror would violate [the] right to a fair trial." *Dyer v. Calderon,* 151 F.3d 970, 973 (9th Cir.1998) (en banc).

In this case, the parties learned of the improper contact after the conviction, already too late to prevent any effect it might have had on the juror involved, or on the jury's deliberations. Even so, one might be concerned that the defendants' delay in raising the matter could have an adverse effect on one or more of three substantial interests: finality, judicial economy, and fairness to the government. However, in this case, none of these interests was implicated to such an extent as to warrant the forfeiture of the defendants' rights. When the court learned of the jury issue, although the trial had ended

some months before, the defendants had still not yet been sentenced. No great degree of finality had, therefore, been reached, and the court could have held an evidentiary hearing without suffering the inefficiencies of reopening a final judgment. Fairness to the government is not a serious concern for the same reason, and also because the government itself delayed in informing the defense and itself failed to inform the court. Next, the failure of the defendant to file a written motion, while regrettable, is also not so damaging as to extinguish the essential rights of the defendants. Finally, the court's obligation to ensure the integrity of the process, and particularly to ensure that the actions of court personnel did not prejudice defendants' rights substantially outweighs any concern over any delay that might be present here.

**Conclusion**

For the foregoing reasons we remand with instructions that the district court conduct a hearing to determine whether the incident complained of affected the defendants' substantial rights. If it finds that it did, it shall grant a new trial. If, on the other hand, the district court concludes that the verdicts should stand, it shall enter a written order to that effect with findings of fact and conclusions of law and forward that order to this court for review. Except as remanded for the limited purpose described above, the court retains jurisdiction over the case and the remaining issues.

**REMANDED IN PART WITH INSTRUCTIONS.**