**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Elvis Anthony Ruben SINGH,**
**Defendant—Appellant.**

**United States of America,**
**Plaintiff—Appellee,**

v.

**James Dennis Evans, Defendant—**
**Appellant.**

**United States of America,**
**Plaintiff—Appellee,**

v.

**Gabriele Elizabeth Lopez, aka Nee**
**Konig, Gabriele Elizabeth Koenig,**
**Defendant—Appellant.**

United States of America,
Plaintiff—Appellee,

v.

Bernard Quarles, aka Bernard
Robinson, Defendant—
Appellant.

No. 02–30368, 02–30392,
02–30397, 03–30068.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 2003.

Decided March 29, 2004.

Stephanie Whitaker, Esq., Earl Allan Hicks, Esq., Joseph H. Harrington, Esq., Office of the U.S. Attorney, Spokane, WA, for Plaintiff–Appellee.

Lana C. Glenn, Esq., Law Office of Lana C.C. Glenn, Richard D. Wall, Esq., Beth M. Bollinger, Esq., Attorney at Law, Spokane, WA, Dawn Reynolds, Esq., Dawn Reynolds; ESQ., Attorney At Law, Dallas, OR, for Defendants–Appellants.

Before: NOONAN, WARDLAW, and PAEZ, Circuit Judges.

## MEMORANDUM *

Elvis Anthony Ruben Singh ("Singh"), Gabriele Koenig ("Koenig"),[1] James Dennis Evans ("Evans"), and Bernard Quarles ("Quarles") appeal their various convictions and sentences for distribution and possession of cocaine base. We have jurisdiction under 28 U.S.C. § 1291, and we affirm each defendant's conviction and sentence.[2]

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Although the district court docket lists Gabriele Koenig's name as "Gabriele Lopez," we refer to her, as the parties do, as "Koenig."

2. Because the parties are familiar with the facts, we recite them only as necessary to explain our decision.

## I. Common Claims

Singh, Koenig, and Evans each challenge the district court's joinder of, and subsequent refusal to sever, their trials.

### A. Joinder

■ The district court did not err in joining Singh, Koenig, and Evans for trial. All three defendants were accused of participating in a drug ring out of the residence at 918 East Empire, with Singh leading the ring, Koenig facilitating drug sales, and Evans soliciting potential customers. In addition, Special Agent Chuck Beaumont's testimony linked Singh, Koenig, and Evans to the Empire residence. Because a logical relationship may be shown where "the common activity constitutes a substantial portion of the proof of the joined charges," *United States v. Sarkisian,* 197 F.3d 966, 976 (9th Cir.1999), these facts establish a sufficiently "logical relationship" to support the joinder of these defendants for trial.

Moreover, this was not a complex case, and the record does not demonstrate that the jury was unable to "compartmentalize the evidence" against each defendant. *United States v. Polizzi,* 801 F.2d 1543, 1554 (9th Cir.1986). There was a substantial amount of independent evidence against each defendant, including tape recordings implicating Singh, Koenig, and Evans in the drug transactions. All three defendants were charged with similar offenses involving cocaine base, with no one defendant showing a "markedly different degree[ ] of culpability" that would affect the jury's impression of the other co-defendants. *See Sarkisian,* 197 F.3d at 977.

Finally, as a cautionary measure, the district court on several occasions gave instructions, similar to other curative instructions approved by the Supreme Court or this circuit, to the jury to separate the charges against each defendant. *See, e.g.,*

*Zafiro v. United States,* 506 U.S. 534, 540–41, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *United States v. Johnson,* 297 F.3d 845, 860 (9th Cir.2002), *cert. denied,* 537 U.S. 1242, 123 S.Ct. 1376, 155 L.Ed.2d 214 (2003).

### B. Severance

■ Nor did the district court abuse its discretion by denying defendants' motion for severance. Singh, Koenig, and Evans were properly joined at trial because of the logical relationship between their offenses. The jury was capable of assessing the strength of the government's case against each individual defendant, and the defendants fail to demonstrate how the joint trial "compromise[d] a specific trial right of one of the defendants, or prevent[ed] the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933.

## II. Singh

### A. Possession of a Firearm

■ The district court did not abuse its discretion, as Singh argues, by imposing a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm. Singh contends that the firearms found in his bedroom at the Empire residence were not "connected with the offense" because his severe physical disability prevented him from using any of the firearms. U.S.S.G. § 2D1.1 cmt.3. Nevertheless, the district court found that Singh could have fired a gun if it were placed in his hands and that he also could have directed one of his associates to use a gun to protect the drugs. We have affirmed sentencing enhancements in cases with more attenuated spacial and temporal "connections" between the firearm and the offense. *See, e.g., United States v. Stewart,* 926 F.2d 899 (9th Cir.1991) (upholding

a sentencing enhancement where the weapon was found at the defendant's home fifteen miles from the place where the drug distribution occurred); *United States v. Willard,* 919 F.2d 606 (9th Cir.1990) (upholding an enhancement where the defendant was arrested in his car without any weapons, but the police later found thirty-one firearms at his place of business).

### B. *Extraordinary Physical Impairment*

■ Singh also challenges the district court's refusal to grant a downward departure under U.S.S.G. § 5H1.4 for his extraordinary physical impairment, contending that § 5H1.4 authorized the district court to reduce his sentence below the statutory minimum term of 120 months and to substitute home detention in lieu of imprisonment. The district court properly ruled that it could not impose a sentence below Singh's mandatory minimum term of 120 months, as required by 21 U.S.C. § 841(b)(1)(A). *See* U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."); *see also United States v. Sharp,* 883 F.2d 829, 831 (9th Cir.1989) ("Where, as here, the statutory sentencing floor is lower than that of the guidelines, the district court can exercise its discretion to reduce the sentence based on mitigating factors to a term less than the guidelines range minimum ... but not less than the statutory minimum."). The district court also properly concluded that home detention was unavailable to Singh because he is a Zone D offender. *See* U.S.S.G. § 5C1.1(f) (stating that, for Zone D offenders, "the minimum term shall be satisfied by a sentence of imprisonment.").

### III. *Koenig*

#### A. *Drug Ledgers*

■ The district court did not abuse its discretion by admitting evidence of drug ledgers found at the Empire residence. Although Koenig contends that the drug ledgers impermissibly heightened the risk of "guilt by association" by linking her to the residence, the district court properly admitted the evidence and instructed the jury that the drug ledgers could be used only for the limited purpose of proving "the character and use of the place where found." *See United States v. Jaramillo–Suarez,* 950 F.2d 1378, 1383 (9th Cir.1991) (holding that "the jury could consider the facts that the pay/owe sheet was evidence of drug-related activity, that it was linked to the [residence in question], and that [the defendant] was also linked to the [residence]"). Moreover, the record shows that the district court conducted an extensive hearing on Special Agent Beaumont's qualifications as an expert, and concluded that "he should be allowed to testify that in his opinion these are [pay/owe] sheets reflecting drug transactions and what he bases that opinion on," which is sufficient for purposes of Federal Rule of Evidence 703.

#### B. *Jury Bias*

Koenig asserts that the district court failed to adequately respond—either by questioning the jurors or granting a mistrial—to allegations that the prosecution attempted to bias the jury during the trial by executing arrest warrants against a group of "Singhs" in an unrelated case. Because Koenig's counsel never raised an objection at trial, we review for plain error. *Jones v. United States,* 527 U.S. 373, 388, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

■ The district court did not plainly err by not questioning the jurors further about the arrest warrants because the warrants were merely coincidental and no juror actually heard about the incident. *See United States v. Brande*, 329 F.3d 1173, 1176 (9th Cir.2003) ("No evidentiary hearing is required [where] the facts have shown clearly that the alleged [prosecutorial] misconduct or bias simply could not have affected the verdict.").

### C. Vouching for a Witness

■ The district court did not plainly err by failing to strike allegedly improper statements by the government during closing argument. The prosecutor did not offer a "personal assurance[ ] of the witness[es's] veracity" and therefore did not vouch for their credibility. *United States v. Parker*, 241 F.3d 1114, 1119 (9th Cir. 2001). Nor did he imply that he had "extra-record knowledge of or the capacity to monitor the witness's truthfulness." *United States v. Necoechea*, 986 F.2d 1273, 1278 (9th Cir.1993). The prosecutor's statements that David Palmer and Janie Arambula were "tools" of the Drug Enforcement Agency alluded to their roles and duties as confidential informants, not their propensity for truthfulness.

### D. Instruction on Mandatory Minimum Sentence

■ The district court did not abuse its discretion by refusing to instruct the jury that Koenig was potentially subject to a mandatory minimum sentence. Koenig cites no authority which requires the district court to instruct on the possibility of a mandatory minimum sentence. In fact, had the district court agreed to give the proposed instruction, it may have improperly blurred the distinction between the guilt phase of the trial and the subsequent sentencing proceeding. *See, e.g., United*

*States v. Wilson*, 506 F.2d 521, 522–23 (9th Cir.1974) ("The jury's the law to determine guilt; the judge imposes sentence. Even if the statutory sentence were mandatory, it is still the exclusive province of the court to pronounce it.").

### E. Cumulative Error

■ Because we conclude that none of Koenig's claims of trial error are valid, we also reject her argument that the alleged trial errors had the "cumulative effect" of prejudicing the outcome of her case.

### F. Safety Valve

■ The district court did not clearly err in its factual determination that Koenig was ineligible for relief under the "safety valve" provision of 18 U.S.C. § 3553(f)(5). The district court noted Koenig's evasiveness and her unwillingness to disclose "her knowledge of Mr. Singh's and [her own] involvement in the drug house transactions that were going on at the Singh house." Contrary to Koenig's contention, the latter finding regarding Koenig's knowledge about general drug activity at the Empire residence was not inconsistent with an earlier finding by the district court that there was insufficient evidence of Koenig's participation in other specific drug transactions for which Koenig was charged and eventually acquitted. Moreover, the district court properly asked for information about "the offense of conviction and all relevant conduct." *United States v. Miller*, 151 F.3d 957, 960 (9th Cir.1998). The district court did not, as Koenig argues, unfairly demand that she disclose information about offenses beyond "the same course of conduct or . . . common scheme or plan."

### IV. Evans

### A. Transcript of Tape Recording

■ The district court did not abuse its discretion by allowing the jury to read a

government-prepared transcript of a tape recording of a drug transaction involving Evans, as the tape recording was played in court. Evans claims that the government transcript prejudicially ascribed certain statements on the recording to him, even though it was disputed at trial whether those statements were made by him or his co-defendant, Joseph Davis ("Davis"). However, the agent who participated in the taped conversation testified to the accuracy of the transcript and repeatedly stated that he could distinguish between Evans's and Davis's voices on the recording. The agent also testified that he was present when Evans talked about "weighing" the drugs during the April 9th drug transaction. Finally, to avoid any potential confusion, the district court instructed the jury that the transcripts themselves were not evidence.

## B. Davis' Out–of–Court Statement

■ The district court did not abuse its discretion by admitting Palmer's testimony that Davis wanted to bring Evans along on the April 9th drug transaction because "it was his people and [ ] we needed this guy to go get the cocaine." Davis's out-of-court statement was admissible because the evidence established that he was a coconspirator. Davis made the statement in Palmer's presence, while they were on their way to pick up Evans, "during the course and in furtherance of" their trip to purchase crack cocaine together. The fact that the conspiracy charge had been dismissed did not operate as a *per se* bar to this evidence. *See* Fed.R.Evid. 801(d)(2)(E) (1972 Advisory Committee Notes) ("While the rule refers to a coconspirator, it is this committee's understanding that the rule is meant to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for the purposes of this rule even though no conspiracy has been charged.").

In any event, there was little risk that Evans was prejudiced by Palmer's testimony given that the jury heard evidence that Evans knew Davis, that he led Davis and Palmer to the Empire residence, and that he and Davis left the residence with cocaine.

## C. Safety Valve

■ In denying Evans's request for a "safety valve" departure under 18 U.S.C. § 3553(f)(5), the district court noted Evans's lack of credibility and his untimeliness in making the request. The district court reasonably concluded that Evans, having spent a considerable amount of time with Singh during the period when Singh sold drugs out of his bedroom, "had more knowledge about drug transactions at the Singh residence than he disclosed in his Statement or his testimony." The district court's determination that Evans possessed more information about drug sales other than those on April 9, 2002 was not clearly erroneous. Nor did the district court impermissibly demand that Evans disclose information about offenses beyond "the same course of conduct or of a common scheme or plan." The district court properly asked for information about "the offense of conviction and all relevant conduct." *Miller*, 151 F.3d at 960.

## V. Quarles

### A. Minor/Minimal Role

■ The district court did not clearly err in determining that Quarles did not qualify for a downward adjustment under U.S.S.G. § 3B1.2 for his alleged "minor or minimal role" in the drug sales. Quarles conceded at the sentencing hearing that he (1) volunteered to take the informant and the DEA agent to the drug supplier's house; (2) gave the directions to the drug supplier's house; and (3) was present at

every step of the transaction. Based upon this evidence alone, the district court could have reasonably concluded that Quarles was not "substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt.3(A).

### B. Equalization of Sentences

█ The district court did not abuse its discretion by imposing a harsher sentence upon Quarles than those of his co-defendants. Quarles's argument to the contrary glosses over his extensive criminal history—which includes assault, theft, driving under the influence, and multiple arrests for domestic violence—and the presentence report determination that he qualified for criminal history Category VI, and improperly compares his offense conduct with that of his co-defendants.

### C. Ineffective Assistance of Counsel

█ Quarles argues that he was denied effective assistance of counsel because his trial counsel (1) improperly allowed him to waive his "right to pursue a downward departure," and (2) failed to review and independently investigate the government's evidence of guilt. Because the record on direct appeal is insufficient to evaluate the conduct and motives of Quarles's trial counsel, we decline to address these issues. *See United States v. McKenna,* 327 F.3d 830, 845 (9th Cir.2003) ("Claims of ineffective assistance of counsel are generally inappropriate on direct appeal.").

### D. Discretionary Refusal to Depart

█ Finally, we lack jurisdiction to review Quarles's challenges to the district court's discretionary denial of his requests for a downward departure. *See Smith,* 330 F.3d at 1212.

\*    \*    \*    \*    \*    \*

In sum, Singh's conviction and sentence in Appeal No. 02–30368, Koenig's convic-

tion and sentence in Appeal No. 02–30397, Evans's conviction and sentence in Appeal No. 02–30392, and Quarles's conviction and sentence in Appeal No. 03–30068, are each and all AFFIRMED.