**UNITED STATES of America,
Plaintiff,**

v.

**Juan BRAVO–FERNANDEZ and
Hector Martinez–Maldonado,
Defendants.**

**Criminal No. 10–232 (FAB).**

United States District Court,
D. Puerto Rico.

July 7, 2011.

Peter M. Koski, U.S. Department of Justice, Washington, DC, for Plaintiff.

David Z. Chesnoff, Chesnoff & Schonfeld, Las Vegas, NV, Jose A. Pagan–Nieves, Joseph C. Laws, San Juan, PR, for Defendants.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

On April 5, 2011, Juan Bravo–Fernandez ("Bravo") and Hector Martinez–Maldonado ("Martinez") (collectively, "defendants") moved this Court to conduct a hearing to investigate possible juror misconduct during their trial. (Docket No. 475.) On May 9, 2011, the government filed an opposition to defendants' motion. (Docket No. 482.) On May 16, 2011, defendants filed a reply. (Docket No. 488.)

Defendants argue that information revealed in an anonymous radio interview of an unidentified individual who claimed to be a juror in this case provides sufficient basis for the Court to conduct an evidentiary hearing into possible juror misconduct. Specifically, defendants allege that the unidentified individual's claims that (1) jurors heard and/or read news accounts of the trial during the trial, (2) commented among themselves about the news accounts that they read and/or heard during trial, (3) decided to color-code their clothing on several days during trial to send a message that they would not be swayed by politics, and (4) were instructed to meet at a designated location so they that they could be transported to and from the courthouse each day suggest that the jury "was tainted by extrinsic influences." (Docket No. 475 at 2.) Defendants maintain that a hearing is required to question each juror individually to determine whether he or she was exposed to extrinsic information and whether or not it was prejudicial to defendants. *Id.* at 2–3.

## I. Legal Standard

Rule 606(b) of the Federal Rules of Evidence, which governs the standard of inquiry into the validity of a verdict or indictment, states the following:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was im-

properly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

■ This rule codifies the universal and well-settled common-law rule "that prohibits the admission of juror testimony to impeach a jury verdict." *United States v. Connolly*, 341 F.3d 16, 34 (1st Cir.2003) (citing *Tanner v. United States*, 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987)). The First Circuit Court of Appeals has noted that there are significant policy considerations underlying this rule, "including finality, maintaining the integrity of the jury system, encouraging frank and honest deliberations, and the protection of jurors from subsequent harassment by a losing party." *Connolly*, 341 F.3d at 34. The exception to this common-law rule is for cases in which "extraneous prejudicial information was improperly brought to the jury's attention." Fed. R.Evid. 606(b). Despite the exception, the First Circuit Court of Appeals has repeatedly warned that "courts generally should be hesitant to haul jurors in after they have reached a verdict to probe for potential instances of bias, misconduct, or extraneous influences." *Connolly*, 341 F.3d at 34 (internal punctuation omitted) (quoting *Neron v. Tierney*, 841 F.2d 1197, 1205 (1st Cir.1988)). Accordingly, juror inquiry should only be conducted if "reasonable grounds for investigation exist"; in other words, if "there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." *Id.* (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2nd Cir.1983)); *see also Neron*, 841 F.2d at 1202 (a decision to probe into juror

decision-making "presumes a sufficient showing to undergird genuine doubts about impartiality.")

## II. Allegations of Juror Impropriety

The First Circuit Court of Appeals has noted that "not every allegation of juror bias or misconduct establishes a need to interrogate a juror." *Neron*, 841 F.2d at 1205. While courts have recognized an exception to the common-law rule against post-verdict juror inquiry in situations where an extraneous influence was alleged to have affected the jury, the burden still remains on defendant to make "some satisfactory threshold showing of partiality or misconduct." *Id.* at 1206. Defendants' allegations of juror impropriety fall short of meeting the standard to warrant a juror inquiry. The interview given by an unidentified individual, implying, at most, that media coverage of the trial was pervasive, constitutes "weakly authenticated, vague, and speculative" material that is insufficient to authorize a post-verdict juror injury.[1] Moreover, defendants do not specifically identify any witnesses they would call at an evidentiary hearing, but demand that the entire jury be summoned. Nor do defendants clearly identify what the substance of any testimony could possibly reveal. *See Connolly*, 341 F.3d at 35 (affirming district court's decision denying defendant's motion for juror inquiry where defendant's allegations were based solely on speculation.) The Court finds that the anonymous radio interview does not pose "reasonable grounds" for investigation because the unidentified source lacks reliability and the comments by the alleged juror are much too vague and speculative to warrant a post-verdict juror inquiry.[2] This situation is markedly different from those instances in which an identified juror approached the court or a party with specific allegations of a juror impropriety, and the court was required to conduct an investigation into possible juror misconduct.[3]

### A. Jury Exposure to Media Reports

Defendants' allegation that the Court is required to hold the requested inquiry because the jurors' exposure to extrinsic evi-

---

1. *See United States v. Porcaro*, 648 F.2d 753, 756–757 (1st Cir.1981) (rejecting defendant's contention that "frequent and relatively prominent articles in the leading local newspaper" "deprived him of a fair and impartial trial"); *see also King v. United States*, 576 F.2d 432, 438 (2nd Cir.1978) (denying defendant's request for post-verdict juror inquiry where defendant submitted a poorly authenticated affidavit purportedly signed by a juror indicating that the juror was exposed to publicity about the defendant during trial).

2. *See United States v. Moten*, 582 F.2d 654, 664 (2nd Cir.1978) (quoting *Remmer v. United States*, 350 U.S. 377, 378, 76 S.Ct. 425, 100 L.Ed. 435 (1956)) (*"Remmer II "*), (noting that "limits on post-trial inquiry into jury verdicts are necessary in the interest of finality" and it is only "**when reasonable grounds exist to believe** that the jury may have been exposed to such an [extraneous] influence, [that] 'the entire picture should be explored.' ") (emphasis added).

3. *See United States v. Thomas*, 463 F.2d 1061, 1063 (7th Cir.1972) (finding that district court was required to investigate juror misconduct when a juror called defendant's wife "with evidence indicating that a prejudicial news article was actually present in the jury room and ... was in fact used by some jurors to persuade others"); *United States v. Martinez*, 14 F.3d 543 (11th Cir.1994) (finding that the jury's improper consideration of extrinsic materials required a new trial where district court received a note from a named juror stating that one of the jurors commented in deliberations about an article she saw indicating the possible length of defendant's sentence); *United States v. Littlefield*, 752 F.2d 1429 (9th Cir.1985) (finding that the established fact that a juror brought into jury deliberations and discussed with other jurors a news magazine article about tax fraud schemes similar to those with which defendants were charged was not harmless error.)

dence during the trial triggers a presumption of prejudice in this case is similarly rejected. *See* Docket No. 475 at 6–9. Unlike the seminal case on this issue, *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954) ("*Remmer I*"), where the Supreme Court found that "any private communication, contact, or tampering directly or indirectly, with a juror during trial about the matter pending before the jury" is "presumptively prejudicial", there have been no allegations of any such conduct that would warrant a presumption of prejudice in this case. *See also United States v. Gaston–Brito,* 64 F.3d 11, 13 (1st Cir.1995) (finding that alleged *ex parte* communication by a government agent with the jurors was presumptively prejudicial and required the court to "conduct a sufficient inquiry to determine whether the communication was harmless"). The First Circuit Court of Appeals has held that the presumptively prejudicial standard is not applicable in all instances where an extraneous influence has been alleged to have affected the jury. *See United States v. Boylan,* 898 F.2d 230, 261 (1st Cir.1990) ("[T]he presumption is applicable only where there is an egregious tampering or third party communication which directly injects itself into the jury process.") The *Boylan* court upheld the district court's decision not to apply the presumptively prejudicial standard where a juror complained that another juror had circulated a magazine clipping referencing defense counsel among the jury, stating that "the *Remmer* standard should be limited to cases of significant *ex parte* contacts with sitting jurors or those involving aggravated circumstances far beyond what has been shown here." *Id.*

■ The facts alleged in this case are less severe than those in *Boylan;* as such, the Court declines to apply the presumptively prejudicial standard where the allegations that the jury was exposed to media reports, let alone used the materials in deliberating upon a verdict, are vague and speculative. *See Porcaro,* 648 F.2d at 757 (1st Cir.1981) (rejecting, as being "without merit", defendant's contention that the presumptively prejudicial test should automatically apply where there was substantial media coverage of his trial). While defendants attempt to differentiate *Porcaro* on the grounds that here there have been allegations that jurors were exposed to media reports, the *Porcaro* court was clear in stating that "where the publicity appearing during the trial is neither inherently prejudicial nor unusually extensive, the defendant must assume the traditional burden of showing actual jury prejudice." *Id.* at 758. An unidentified individual's comments on a radio program that "these comments always reach you, news, anything . . ." does not, as defendants claim, imply that jurors read or listened to media reports, but only that media coverage of the trial was pervasive.[4] (Docket No. 475–1 at 13.) Accordingly, the Court finds that the individual's comments do not require application of the presumptively prejudicial standard and that defendants have failed to satisfy their burden to show actual jury prejudice to warrant a post-verdict juror inquiry.

## B. Pre-deliberation Discussions and Coordinated Clothing by Jurors

Defendants allege that the radio interview of the unidentified individual "indi-

---

4. Indeed, even if the Court were to take the alleged juror's comments at face value, the individual's statements that the jury was determined not to "get carried away by what the press was saying, because what it could do was distort all the stories" further undermines the defendants' argument for application of the presumptively prejudicial standard. *See* Docket No. 475–1 at 13.

cates that several of the jurors had pre-deliberation discussions about the evidence and about newspaper articles they had read." (Docket No. 475 at 13.) Defendants fail, however, to cite to any relevant portion of the radio interview transcript to support this proposition. Defendants argue that the fact of the jury's deliberations must be assumed (Docket No. 475 at 13–15); the Court finds such an assumption, however, to be speculative and unmerited. Defendants cite to *United States v. Jadlowe* for support for their proposition that jury discussions prior to formal deliberations are inappropriate and must be investigated. 628 F.3d 1, 18–22 (1st Cir.2010). That case, however, is inapposite. The *Jadlowe* court determined that the district court's erroneous jury instruction, which encouraged jurors to discuss certain aspects of the case before formal deliberations, was harmless beyond a reasonable doubt. *Id.* In ruling so, the *Jadlowe* court assessed whether or not the erroneous instruction prejudiced the jury against the defendant. While defendants cite to the language of *Jadlowe* for their proposition that pre-deliberation discussions among jurors may be inappropriate, defendants have failed to establish that any such deliberations ever occurred here or caused harm to defendants.

▉ Defendants argue that the decision of some of the jurors to color-code their clothing to show their impartiality to politics is proof that the jurors discussed comments they heard in the news about the trial. Defendants have provided no evidence that such a link exists. In fact, the unidentified individual in the radio interview stated that a group of jurors decided to dress in the color blue one day, and the color red another day, representing the political party in power (and the party to which defendant Martinez belongs) and the opposition party, respectively, as a

general statement that they would not be swayed by politics in response to the procession of individuals (including elected officials belonging to the party to which defendant Martinez belongs) who created a politically charged environment both outside the courthouse and inside the courtroom every day of the trial. (Docket No. 475–1 at 8.) Defendants' argument that this decision, taken by a group of jurors, is direct evidence that jurors had engaged in pre-deliberation discussions "about the evidence and about the newspaper articles they had read" is entirely speculative. A post-verdict investigation of each individual juror requires "clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of defendant." *Connolly,* 341 F.3d at 34 (quoting *Moon,* 718 F.2d at 1234.) Defendants fall woefully short of meeting this standard.

## C. Communications between the Court and Jury

Finally, defendants allege that a jury investigation is required to determine the impact upon jurors of the instructions they were given to meet at a specific location so they could be transported to and from the courthouse during trial. (Docket No. 475 at 17–18.) In support of this theory, defendants cite *Rushen v. Spain,* in which the Supreme Court, *per curiam,* held that an unrecorded *ex parte* communication between trial judge and a juror about evidence presented at trial was a harmless error. 464 U.S. 114, 119, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983). In *Rushen,* the Supreme Court found that a post-trial hearing was an adequate remedy to determine "whether respondent was prejudiced by the undisclosed communications." *Id.* The *Rushen* court further noted that juror contact with a trial judge during trial is not out of the ordinary, but should generally

be disclosed to counsel for all parties. *Id.* Importantly, the *Rushen* court recognized that "the necessity for preserving society's interest in the administration of criminal justice" requires that any alleged constitutional deprivation is "subject to the general rule that remedies should be tailored to the injury suffered and should not unnecessarily infringe on competing interests." *Id.* at 118, 104 S.Ct. 453 (internal punctuation omitted) (citing *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)). Defendants do not aver that they suffered any constitutional deprivation, nor do they make allegations that any *ex parte* contact occurred between the judge and the jury in this case; in fact, none did.

■ Defendants' primary allegation is that defendants and their counsel were never notified of the arrangement regarding transportation of the jurors to the courthouse, and that such an arrangement, in and of itself, has caused prejudice to defendants. (Docket No. 475 at 17–18.) The government states that they also were never notified of the arrangement, but believes "that is immaterial." (Docket No. 482 at 8.) The Court agrees. While defendants claim that they "do not seek to relitigate the issue of whether an anonymous jury should have been empaneled in this case", defendants challenge the precautions taken by this Court that were implemented specifically to protect the jury from excessive trial publicity and political intimidation, precisely the reasons an anonymous jury was empaneled in the

first place. *See id.* at 18, n. 4. The Court has taken the appropriate precautions to protect defendants' rights against prejudice by informing the jury that their anonymity was necessary during the trial because of publicity concerns. Defendants cite no legal authority supporting the proposition that communications between the jury and deputy marshals about transportation logistics are improper. Indeed, other courts have noted the common practice of providing transportation for jurors to and from the courthouse in instances in which an anonymous jury has been empaneled.[5] Therefore, the defendants' complaints regarding jury communications with court staff about transportation and parking are insufficient to merit a post-verdict jury investigation.

### CONCLUSION

For the reasons expressed above, the Court **DENIES** defendants' motion for post-verdict investigation of possible juror misconduct.

**IT IS SO ORDERED.**

---

5. *See United States v. Carson,* 455 F.3d 336, 356 (D.C.Cir.2006) (finding no evidence of judicial bias where judge empaneled an anonymous jury and had "the United States Marshals Service transport jurors to the courthouse from undisclosed locations"); *United States v. Wong,* 40 F.3d 1347, 1376–1377 (2nd Cir.1994) (affirming district court's decision to empanel an anonymous jury and arrange for transportation of jurors to and from the courthouse); *United States v. Ross,* 33 F.3d 1507, 1519–1522 (11th Cir.1994) (rejecting defendant-appellant's claims that empanelment of an anonymous jury violated his rights where district court's orders included telling jurors to "meet each morning in a central location to which federal marshals would return them at the close of the court day").