UNITED STATES of America,
Plaintiff–Appellee,

v.

Gilbert MADRID; Gerald Inouye;
Gordon Yabui; Edwin Madamba,
Defendants–Appellants.

Nos. 86–1019, 86–1020, 86–1021
and 86–1041.

United States Court of Appeals,
Ninth Circuit.

Argued Dec. 15, 1987.

Submitted March 15, 1988.

Decided March 22, 1988.

Matthew S.K. Pyun, Jr., Anthony H. Yusi, Pyunn, Okimoto and Thomason, Honolulu, Hawaii, for Inouye.

James D. Comack, Comack & Kiuchi, Honolulu, Hawaii, for Yabui.

Randall N. Harakal, Shigemura & Ching, Honolulu, Hawaii, for Madamba.

Before CHOY, GOODWIN and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Gerald Inouye, Edwin Madamba, Gordon Yabui and Gilbert Madrid appeal their convictions under 18 U.S.C. §§ 1962(c), 1962(d) and 1955 for illegal gambling and racketeering. Madamba appeals his conviction under 18 U.S.C. § 1951 for extortion. Inouye and Yabui appeal their convictions under 18 U.S.C. § 1623 for making false material declarations before a grand jury.

Each appellant claims that an ex parte communication between a juror and court clerk requires a new trial and that erroneous jury instructions require reversal. We affirm.

## I

During deliberations, two jurors left the jury room. One was crying. This juror sought and found a court clerk. The juror told the clerk that she had been "sworn at" by another juror. The offended juror, Mrs. Audriano, testified that the clerk, Mr. Sakai, instructed her to try to settle her differences with the other juror and thereafter to resume deliberations.

The district court found that the clerk did not place any time limit on jury deliberations, that he did not tell the juror that he brought a message from the judge, that he did not urge the juror either to vote guilty, or alternatively, to vote not guilty, that he did not tell the juror that the judge would not accept a deadlock, and that he told the juror who had "sworn at" Mrs. Audriano to "cool it." The clerk did not affirmatively instruct juror Audriano not to abandon her

Frank J. Marine, U.S. Justice Dept., Washington, D.C., for U.S.

Chester M. Kanai, Honolulu, Hawaii, for Madrid.

convictions upon returning to the jury room.

The juror did not communicate to the clerk the numerical division which existed in the jury room. The clerk did not seek information as to how the juror intended to vote. The juror did not indicate whether she constituted a minority. These facts are substantially corroborated by the testimony and affidavit of Mrs. Audriano and of the juror who accompanied Mrs. Audriano, Mr. Cabriera.

In a final, sworn affidavit, juror Audriano stated: "I did not think that [the clerk] was trying to intimidate or influence me. Whatever [the clerk] said to me, it did not cause my decision to vote as I did ... I did not tell [the clerk] that I was being pushed. I told him I had been sworn at." The juror stated that she had not been urged to change her vote and that she "did not decide to give up at the point [the clerk] talked to me; I decided afterwards as the deliberations continued." The juror testified that, after returning to the jury room and deliberating for seven hours, she changed her position.

The jury returned a special verdict which included finding each defendant guilty of certain offenses and each not guilty of others.

The district court held a hearing to determine whether the ex parte communication had prejudiced the verdict. The district court concluded that it had "not affected the verdict." The district court denied the motion for a new trial.

Appellants also claim that the district court's instruction charging them with racketeering under 18 U.S.C. § 1962(c) ("Count 72") mandates reversal. Appellants point out that the minimum gross daily revenue necessary for conviction under 18 U.S.C. § 1962(c) is "more than $1,000 in any one day." They note that the district court instructed that the minimum necessary amount was "$1,000 in any one day." There was no objection to this instruction at trial. The record indicates that the jury found, in relation to a different count, that defendants received at least $2,000 in gross daily revenue.

Appellants also claim that the district court's instruction charging them with conducting an illegal lottery and mutual scheme under 18 U.S.C. § 1955 ("Count 24") constituted reversible error. They claim that the instruction on this count confused elements of federal law by referring to Hawaii state law, by failing to properly define "lottery," and by incorporating the misstatement of minimum gross daily revenue which appeared in Count 72.

Defendant Inouye makes additional claims. First, Inouye claims that the district court erred by giving an incorrect date on which the statute of limitations should have tolled for his racketeering charges under 18 U.S.C. § 1962 ("Counts 1, 2 and 24"). He argues that this denied him the defenses of withdrawal and abandonment. Second, Inouye claims that the district court erred by refusing to give a manslaughter instruction on one of the racketeering acts in Count 1.

Inouye was sentenced to seventeen years, Madrid to fifteen years, Yabui to twelve years, and Madamba to ten years imprisonment.

The appeal is timely filed. We have jurisdiction under 28 U.S.C. § 1291.

## II

We review alleged jury misconduct independently, in the context of the entire record. *United States v. Bagnariol,* 665 F.2d 877, 885 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). We accord substantial weight to the trial judge's conclusion as to the effect of alleged juror misconduct. Considerable deference is paid to the trial judge, since "[t]he trial judge is uniquely qualified to appraise the probable effect of information upon the jury, the materiality of the extraneous material, and its prejudicial nature." *United States v. Steele,* 785 F.2d 743, 746 (9th Cir.1986), quoting *Bagnariol,* 665 F.2d at 885. We look less harshly upon a conviction if the trial court has conducted an evidentiary hearing. *Bagnariol,* 665 F.2d at 885.

We review allegedly erroneous jury instructions, timely objected to, in their entirety. *United States v. Abushi*, 682 F.2d 1289, 1299 (9th Cir.1982). The trial judge's choice of language justifies reversal only for abuse of discretion. *United States v. Morse*, 785 F.2d 771, 776 (9th Cir.), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2925, 91 L.Ed.2d 553 (1986).

When no objection is made to a jury instruction at trial, we review the instruction for plain error. *United States v. Tom*, 640 F.2d 1037, 1041 (9th Cir.1981).

### III

Appellants claim that the Supreme Court's decision in *Remmer v. United States*, 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1956) ("*Remmer II*"), dictates a new trial. Appellants argue *Remmer II* and *United States v. Bagley*, 641 F.2d 1235 (9th Cir.), *cert. denied*, 454 U.S. 942, 102 S.Ct. 480, 70 L.Ed.2d 251 (1981), stand for the proposition that any ex parte communication to a juror, if it creates a "reasonable possibility" of prejudice to the verdict, constitutes reversible error. They argue that all ex parte communications must be accorded a "presumption of prejudice" when deciding whether to order a new trial. They contend that the ex parte conversation between juror Audriano and court clerk Sakai created a "reasonable possibility" of prejudice to the verdict by providing "extraneous information" to the jury, thus requiring reversal under *Remmer II*.

The government argues, first, that *Remmer II* stands for the proposition that "[a] defendant is entitled to a new trial if there existed a 'reasonable possibility' that misconduct ... affected the verdict." According to the government, since "reasonable possibility" was not proved by the defendant, a new trial is not required.

The government argues, second, that "[t]he Supreme Court in *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), and *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (per curiam), abandoned the *Remmer II* presumption of prejudice ('reasonable possibility' of prejudice) standard, and imposed a burden on the defendant to establish that he was actually prejudiced" by the ex parte communication. Arguing that "actual prejudice" was not proved, they conclude the ex parte contact was harmless.

We decline to adopt the broad interpretation of *Remmer II*, but we conclude that the government's reliance on *Smith* and *Rushen* is accurate. *Smith* and *Rushen* firmly establish that a defendant must demonstrate "actual prejudice" resulting from an ex parte contact to receive a new trial. Unlike *Bagley*, these cases do not involve the unauthorized submission of "extraneous information" (e.g., a file or dictionary) to the jury. Instead, they involve ex parte contacts which did not pertain to "any fact in controversy or any law applicable to the case." *Rushen*, 464 U.S. at 121, 104 S.Ct. at 457.

*Rushen* involved a juror-initiated ex parte contact between the judge and a juror concerning impartiality. "The judge simply assured [the juror] that there was no cause for concern." *Rushen*, 464 U.S. at 121, 104 S.Ct. at 457. The Supreme Court stated in *Rushen*, "[t]he substance of the ex parte communications and their effect on juror impartiality are questions of historical fact entitled to [a] presumption [of correctness]." *Id.* at 120, 104 S.Ct. at 456. Only if there is "convincing evidence to the contrary" and an absence of "fair support" in the record may the finding of fact be set aside. *Id.*

Similarly, *Smith* involved a juror-initiated ex parte communication. *Smith* did not involve extraneous information being placed before the jury as to "any fact in controversy or any law applicable to the case." *Rushen*, 464 U.S. at 121, 104 S.Ct. at 457.

In *Smith*, the Supreme Court, citing to *Remmer II* and *Dennis v. United States*, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950), stated, "[t]hese cases demonstrate that due process does not require a new trial every time a juror has been placed in a potentially compromising situation ... [I]t is virtually impossible to shield jurors from every contact or influence that might theo-

retically affect their vote." *Smith,* 455 U.S. at 217, 102 S.Ct. at 946. The Court continued, "determinations [of prejudice] may properly be made at a *hearing* like that ordered in *Remmer II* and held in this case." *Id.* (emphasis added). "This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215, 102 S.Ct. at 945.

The government, by arguing *Remmer II*'s "reasonable possibility" standard as an alternative to *Smith* and *Rushen,* misconstrues *Remmer II.*

The *Remmer II* standard does not govern a district court's decision to call for a new trial on finding that an ex parte contact presents a "reasonable possibility" of prejudice to the verdict. *Remmer II* requires only that a district court, upon finding a "reasonable possibility" of prejudice, hold a fair *hearing.* In *Remmer II,* the Supreme Court stated, "[i]t was the paucity of information relating to the entire situation [involving a bribe and an open FBI inquiry of a juror prior to the announcement of a verdict] coupled with the presumption [of prejudice] ... which, in our view, made manifest the need for a *full hearing.*" 350 U.S. at 379–80, 76 S.Ct. at 427 (emphasis added).

*Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954) ("*Remmer I*") involved a "presumptively prejudicial" bribe and an FBI inquiry of a juror prior to announcement of the verdict. There, "the Court did not require a new trial ... Rather, the Court instructed the trial judge to 'determine the circumstances, the impact thereof upon the juror, and whether or not [they were] prejudicial, in a *hearing* with all interested parties permitted to participate.'" *Smith,* 455 U.S. at 216, 102 S.Ct. at 945 (emphasis in original), quoting *Remmer I,* 347 U.S. at 230, 74 S.Ct. at 451 (citation omitted).

In *Remmer II* the Supreme Court ordered a new trial, only after concluding that the district court had failed to conduct the full hearing ordered in *Remmer I,* and that prejudice had resulted from "unautho-

rized intrusions purposefully made." 350 U.S. at 382, 76 S.Ct. at 428.

As the Court stated in *Rushen,* "[t]he prejudicial effect of a failure [to disclose the ex parte communication to counsel for all parties] ... can normally be determined by a post-trial hearing." 464 U.S. at 119, 104 S.Ct. at 456.

Reliance on *Rushen* and *Smith* is also supported by our decision in *United States v. Birges,* 723 F.2d 666, 671 (9th Cir.), *cert. denied,* 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984). In *Birges,* the defendant failed to demonstrate that an ex parte contact was prejudicial to his defense. Unlike this case, the judge delivered the ex parte communication, contributing to the possibility of prejudice. Still, we concluded that, "[the defendant] has not demonstrated that the errors committed by the trial judge ... affected the outcome of the trial. [Thus], [t]he motion for a new trial was properly denied." *Birges,* 723 F.2d at 671.

Appellants argue that *Bagley* supports the proposition that a new trial must be ordered if there is any "reasonable possibility" of prejudice. That proposition, not established by *Remmer I* or *Remmer II* and firmly rejected by *Rushen* and *Smith,* is not established by our decision in *Bagley.*

In *Bagley,* "extrinsic material" was placed before the jury in the form of a note discussing witness immunity. As such, the material involved a fact in controversy, witness credibility. *Bagley,* 641 F.2d at 1240–41, citing *United States v. Vasquez,* 597 F.2d 192, 193 (9th Cir.1979). In *Vasquez,* a file containing inadmissible "extrinsic material" was left in the jury room for four hours. While we reversed in *Vasquez* and declined to reverse in *Bagley,* the "reasonable possibility" standard was applied in both instances. That standard was applied expressly because "the *extrinsic material* could have affected the verdict." *Bagley,* 641 F.2d at 1241, citing *Vasquez,* 597 F.2d at 193 (emphasis added). In this case, no extrinsic material—written or otherwise—was presented to the jury.

Similarly, in *Jenkins v. United States,* 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957

(1965) (per curiam), "actual prejudice" was demonstrated. In *Jenkins*, a jury sent a note to the judge indicating that it was unable to agree upon a verdict "because of insufficient evidence." The judge demanded that the jury return a verdict, notwithstanding the insufficiency of the evidence. *Id.* at 446, 85 S.Ct. at 1060.

▇ Here, the judge had no contact with the offended juror. The court clerk did not bring a message from the judge. The clerk was unaware of any division in the jury room on the merits. He did not solicit the juror's intended vote, did not represent himself as a messenger for the judge, did not urge the juror to change her vote, and did not place a time limit on the juror's deliberations. His sole purpose and effect was to calm a juror after she had been "sworn at" by a second juror.

Unlike the *Remmer* facts, we find no evidence of deliberate coercion in the record and no evidence of an unintended effect tantamount to FBI questioning of a juror during deliberations. *See United States v. Armstrong*, 654 F.2d 1328 (9th Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982) (numerous ex parte contacts deemed harmless, including court note to "return a verdict" following rescission of jury note saying jury "deadlock[ed]"); *United States v. Weiner*, 578 F.2d 757, 765 (9th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978) (bailiff statement that he "assumed ... judge would 'like' a verdict" harmless); *see also United States v. Brumbaugh*, 471 F.2d 1128 (6th Cir.), *cert. denied*, 412 U.S. 918, 93 S.Ct. 2732, 37 L.Ed.2d 144 (1973) (bailiff comments urging speedy decision and inquiring as to numerical division of jury deemed harmless); *Callanan v. United States*, 223 F.2d 171, 180–81 (8th Cir.), *cert. denied*, 350 U.S. 862, 76 S.Ct. 102, 100 L.Ed. 764 (1955) (deputy marshal's comments that hung jury not permitted and jurors to be confined until decision reached deemed harmless).

Unlike *Burton v. United States*, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 (1905), and *Smith v. Commonwealth*, 321 S.W.2d 786 (Ky.1959), there was no inquiry by judge or clerk as to numerical division. Moreover, the offended juror testified that the clerk did not "push" her but, instead, informed the juror that he was not interested in "hear[ing] anything about what happened" in the jury room.

*Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926) and *Jordan v. United States*, 22 F.2d 966 (9th Cir.1927), are inapposite, absent a message from the judge or proof of a coercive interpretation of the clerk's statement.

Here, the judge properly instructed the jury that the verdict should be based solely on the evidence in the case. The clerk directed his short ex parte comments to the personal antagonism between two jurors and he spoke briefly to both individuals.

Contrary to a coercive *Allen* instruction, the clerk did not instruct that the jury must return a verdict of guilty or of not guilty and did not state that the judge refused a deadlock.

Rule 43, Fed.R.Crim.P., which permits the defendant to be present "at every stage of the trial," is not implicated here, since the judge did not communicate with the jury and was unaware of the content of the communication between clerk and jurors. *See Steele*, 785 F.2d at 749.

## IV

Appellants claim that the district court's instruction charging them with racketeering (Count 72) under 18 U.S.C. § 1962(c) mandates reversal. They note that 18 U.S.C. § 1962(c) requires proof of a minimum gross daily revenue of "more than $1,000 in any one day," and that the instruction referred to a minimum gross daily revenue of "$1,000 in any one day." Appellants did not object to the instruction at trial. This court reviews an instruction not objected to at trial for plain error. Fed R.Crim.P. 52(b); *United States v. Tom*, 640 F.2d at 1041.

Appellants did not dispute that "more than $1,000" was received "in any one day" as a result of the lottery or mutual scheme. The prosecutor accurately reviewed this element of the racketeering charge. In addi-

tion, the jury convicted appellants on Count 24, which required proof of minimum daily revenue of $2,000 in any one day. *A fortiori* the jury must have found that appellants received "more than $1,000 in any one day."

■ Viewed in its entirety, the instruction does not affect the verdict and does not constitute plain error. *See United States v. Feldman,* 788 F.2d 544, 555–56 (9th Cir.1986).

## V

Appellants claim that the district court's instruction charging them with conducting an illegal lottery and mutual scheme (Count 24) under 18 U.S.C. § 1955 constituted reversible error. They claim that the instruction confused elements of the federal law by referring to Hawaii state law, by failing to properly define "lottery," and by incorporating the Count 72 instruction on minimum gross daily revenue. Appellants raised no objection at trial. This court reviews the instruction for plain error. Fed.R.Crim.P. 52(b); *Tom,* 640 F.2d at 1041.

The district court's Count 24 instruction did not incorporate the earlier instruction for Count 72. In any event, evidence of minimum gross daily revenue of $2,000 in any one day is not disputed by appellants. Consequently, the instruction would not have constituted plain error even if incorporated.

■ The passing reference to Hawaii state law as "substantially the same" is not plain error in light of the judge's accompanying instructions. He said: "I have already told you about the elements of illegal gambling under federal law." In fact, the judge discussed, shortly before the Count 24 instruction, the elements of illegal gambling under 18 U.S.C. § 1955 (Count 68). The preceding instruction stated that the government was required to prove that the gambling business was conducted by five or more persons and, in addition, that it had either continued for more than 30 days or had maintained a minimum gross revenue of $2,000 in any one day.

■ The judge's definition of "lottery" was neither inaccurate nor disputed at trial. The judge accurately defined a "lottery" as "a gambling scheme in which the players pay or agree to pay something of value for chances represented and differentiated by numbers, or combinations of numbers, or by some other medium, one or more of which chances are to be designated the winning ones."

Whether to keep the jury's attention or for levity, the judge added: "I hope you understand what that means. I'm not sure that I do, but I think you know what a lottery means. Anyway, I've told you." This caveat injected no issue into trial which was not included in the indictment. Although the instruction editorializes on congressional clarity, it substantially comports with the statutory definition of a "lottery" under 18 U.S.C. § 1955. Thus, the instruction withstands a plain error challenge. *United States v. Nace,* 561 F.2d 763 (9th Cir.1977).

## VI

Appellant Inouye claims that the district court erred by giving an incorrect date on which the statute of limitations tolled for his racketeering charges under 18 U.S.C. § 1962 (Counts 1, 2, and 24).

■ The first indictment was brought against Inouye in April 1984. The second, superseding indictment, including substantially the same facts, was brought in September 1984. Since the indictments are based on substantially the same facts, the judge's tolling of the five year statute of limitations on the first date, rather than on the second, is inconsequential. *United States v. Charnay,* 537 F.2d 341, 353–55 (9th Cir.), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 528, 50 L.Ed.2d 610 (1976); *United States v. Wilsey,* 458 F.2d 11, 12 (9th Cir. 1972) (superseding indictment based on same essential facts does not displace first indictment while statute tolling).

Under either date, Inouye's withdrawal defense is immaterial, since Inouye never claimed to have withdrawn *between* the

April indictment and the September superseding indictment.[1]

In addition, there is overwhelming evidence that Inouye did not withdraw or abandon the activities and enterprises which gave rise to his RICO convictions during either of the five-year periods at issue. *See, United States v. Parnell*, 581 F.2d 1374, 1384 (10th Cir.1978), *cert. denied sub. nom Cox v. United States*, 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979).

### VII

Appellant Inouye claims that the district court committed reversible error by failing to give a manslaughter instruction on one act of racketeering (Count 1).

In the absence of evidence that Inouye's threat and shooting of David Rivera was caused by mental infirmity or extreme emotional disturbance, the district court was not required to give a manslaughter instruction. *Miller v. Stagner*, 757 F.2d 988 (9th Cir.1985), *amended* 768 F.2d 1090 (9th Cir.1985), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1269, 89 L.Ed.2d 577 (1986).

In addition, since the manslaughter instruction bears only on one of three requisite racketeering acts in Count 1, and two such acts are sufficient to satisfy the "pattern" requirement of 18 U.S.C. § 1961(5), *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the omission is, in any event, harmless.

### VIII

The ex parte contact between the court clerk and juror was amply explored in a post-conviction hearing. The ex parte contact did not relate to any fact in controversy or any law applicable to the case. Appellants fail to demonstrate actual prejudice resulting from the ex parte contact

and we do not find reversible error in the instructions.

AFFIRMED.

---

1. The relevant statute of limitations is five years. 18 U.S.C. § 3282. Inouye only claimed to have withdrawn in periods before or after the April to September period.