**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

      v.

EDWARD ROSENTHAL,
      *Defendant-Appellant.*

No. 03-10307

D.C. No.
CR-02-00053-1-
CRB

UNITED STATES OF AMERICA,
      *Plaintiff-Appellant,*

      v.

EDWARD ROSENTHAL,
      *Defendant-Appellee.*

No. 03-10370

D.C. No.
CR-02-00053-3-
CRB

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
September 13, 2005—San Francisco, California

Filed April 26, 2006
Amended July 19, 2006

Before: Betty B. Fletcher, John R. Gibson,* and
Marsha S. Berzon, Circuit Judges.

*The Honorable John R. Gibson, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

7999

Opinion by Judge B. Fletcher

**COUNSEL**

Dennis P. Riordan, Donald M. Horgan, and Joseph D. Elford, San Francisco, California, for the appellant.

Amber S. Rosen, George L. Bevan, Jr., Hannah Horsley, and Kevin V. Ryan, U.S. Attorney's Office, San Jose, California, for the appellee.

**ORDER**

The panel, with the following amendments, has voted to deny the petitions for rehearing filed by Edward Rosenthal and the Government; Judge Berzon voted to deny Rosenthal's petition for rehearing en banc and Judges B. Fletcher and Gibson so recommend. The panel has granted the government all relief it requested, and it has granted in part the relief Rosenthal requested.

The opinion filed April 26, 2006, slip op. 4745, and published at 445 F.3d 1239 (9th Cir. 2006) is hereby amended as follows:

1.  Fifteenth line (first full paragraph) of slip op. 4755, delete the entire paragraph beginning with "Although the City of Oakland" and ending with "under 21 U.S.C. § 841(a))." On the following line (26) of same page, delete the word "further".

2.  Second line from the bottom of slip op. 4758, delete the entire paragraph beginning with "Juror A's declaration" and continuing onto following page, ending with "consider the federal law." "

The full court was advised of the petitions for rehearing and rehearing en banc and the proposed amendments included herein.

The opinion as amended is filed simultaneously with this order. No further petitions for rehearing or rehearing en banc will be entertained.

With the exception of the relief granted to the parties discussed herein, the petitions for panel rehearing and the petition for rehearing en banc are **DENIED**.

---

**OPINION**

B. FLETCHER, Circuit Judge:

Edward Rosenthal appeals a three-count conviction for violations of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.*, asserting an as-applied Commerce Clause challenge, a claim of immunity pursuant to 21 U.S.C. § 885(d), erroneous evidentiary rulings and instructions by the district court, prosecutorial misconduct, juror misconduct, and the improper denial of a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). The government cross-appeals, claiming that the district court erroneously found Rosenthal eligible for

the "safety valve" and erroneously departed downward to impose a single day of confinement.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b), and we reverse the conviction solely on the issue of jury misconduct. We affirm the district court on all other grounds and dismiss the government's claims regarding sentencing as moot.

## I

In November 1996, Californians passed, by voter initiative, Proposition 215, the Compassionate Use Act, which allows patients to obtain marijuana for "personal medical purposes . . . upon the written or oral recommendation or approval of a physician." CAL. HEALTH & SAFETY CODE § 11362.5(d). One of the purposes of the Compassionate Use Act is

> [t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.

*Id*. The statute shields patients and their primary caregivers from prosecution under state-law provisions outlawing the possession and cultivation of marijuana. *See id.* § 11362.5(d).

## A

After passage of the Compassionate Use Act, a number of "medical cannabis dispensaries" were formed to make marijuana accessible to seriously ill patients. In support of those efforts, the Oakland City Council, on July 28, 1998, adopted

Ordinance No. 12076 ("the Oakland Ordinance"), which intends to "ensure access to safe and affordable medical cannabis pursuant to the Compassionate Use Act of 1996." Oakland, Cal., Ordinance 12076 § 1(C) (July 28, 1998) (codified as amended at OAKLAND, CAL., MUN. CODE ch. 8.46). The Oakland Ordinance purports to "provide immunity to medical cannabis provider associations pursuant to Section 885(d) of Title 21 of the United States Code." *Id.* § 1(D). Under the Ordinance, the City Manager designates "one or more entities as a medical cannabis provider association."[1] That entity would then designate individuals to help distribute medical cannabis to seriously ill persons.

The City of Oakland designated the Oakland Cannabis Buyers' Cooperative ("OCBC") an official medical-cannabis-provider association. Jeffrey Jones, OCBC's executive director, designated Rosenthal to be an agent of the OCBC and to cultivate marijuana plants for distribution to authorized medical-cannabis users. That designation, memorialized in a letter from Jones to Rosenthal on September 4, 1998, specifically states that "you are deemed a duly authorized 'officer of the City of Oakland' and as such are immune from civil and criminal liability under Section 885(d) of the federal Controlled Substances Act."

**B**

After California's approval of the Compassionate Use Act, questions surfaced as to whether cannabis dispensaries actually were immune from prosecution under state and federal drug laws. In 1997, a California Court of Appeal held that cannabis-cultivating clubs are not "primary caregivers" within the meaning of the Compassionate Use Act and are therefore not shielded from prosecution under the state's controlled-

---

[1]A 2004 amendment to the Oakland Ordinance states that "the City Manager shall designate not more than one entity as a medical cannabis provider association."

substances laws. *See People ex rel. Lungren v. Peron*, 70 Cal. Rptr. 2d 20, 31-32 (Ct. App. 1997).[2] On May 19, 1998, the same district court from which the instant appeal is taken entered a preliminary injunction order barring the OCBC (and five other cannabis dispensaries) from manufacturing, distributing, or possessing marijuana with the intent to manufacture or distribute, in violation of federal law. *See United States v. Cannabis Cultivators Club*, 5 F. Supp. 2d 1086, 1106 (N.D. Cal. 1998).

The OCBC, after designation as an official cannabis dispensary, sought dismissal of the complaint, but the district court denied that request, rejecting the OCBC's claim that the Oakland Ordinance immunized it from federal liability under 21 U.S.C. § 885(d). The district court further denied OCBC's requests to modify the injunction to permit an exception in cases of medical necessity.[3]

Rosenthal continued cultivating marijuana for distribution to both the OCBC and San Francisco's Harm Reduction Center from October 2001 until February 12, 2002, the day of his arrest.

---

[2]The California Supreme Court denied review of the case on February 25, 1998. *Peron*, 70 Cal. Rptr. at 20.

[3]This court reversed and remanded the district court's denial of OCBC's motion to modify, holding that the medical necessity defense was available and that the injunction could be modified to accommodate this defense. *See United States v. Oakland Cannabis Buyers' Coop.*, 190 F.3d 1109, 1115 (9th Cir. 1999). On May 14, 2001, the Supreme Court reversed, holding that "medical necessity is not a defense to manufacturing and distributing marijuana" under the CSA. *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 494 (2001). The Court also held that the district court had no authority to consider a medical necessity defense in exercising its equitable powers, as such consideration was precluded by the CSA. *Id.* at 498-99.

**C**

Rosenthal filed a series of pre-trial motions and, eventually, a motion to dismiss the indictment. He claimed his prosecution exceeded the federal government's powers under the Commerce Clause, violating the Tenth Amendment to the U.S. Constitution; that the government engaged in selective prosecution; that he was immune from prosecution under the federal immunity provision; and that the indictment was tainted due to entrapment-by-estoppel. The district court denied all of Rosenthal's motions. It also granted the government's motions in limine, which precluded Rosenthal from putting on a "medical marijuana" defense, introducing evidence or argument aimed at jury nullification, or introducing evidence or argument related to an entrapment-by-estoppel defense.

**D**

On January 31, 2003, at the conclusion of the trial, the jury found Rosenthal guilty of one count of manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1); one count of conspiracy to manufacture marijuana, in violation of 21 U.S.C. § 846; and one count of maintaining a place for the manufacture of marijuana, in violation of 21 U.S.C. § 856(a)(1).

Rosenthal moved for a new trial pursuant to Federal Rule of Criminal Procedure 33, arguing that the court erred by excluding his defense of entrapment by estoppel; the court improperly excluded 19 jurors who expressed pro-medical-marijuana beliefs; the court erroneously instructed the jury regarding its right to engage in nullification; and Rosenthal was entitled to a new trial because of juror and prosecutorial misconduct. As to juror misconduct, Rosenthal submitted declarations from two jurors, one of whom, on the eve of the verdict, consulted with an attorney-friend who admonished the juror to follow the judge's instructions or risk "get[ting] into trouble." The district court held an evidentiary hearing on

April 1 and 8, 2003, and denied the motion for a new trial in a published order. *See United States v. Rosenthal*, 266 F. Supp. 2d 1068 (N.D. Cal. 2003) ("*Rosenthal I*").

On June 4, 2003, the district court sentenced Rosenthal to one day of imprisonment. *See United States v. Rosenthal*, 266 F. Supp. 2d 1091 (N.D. Cal. 2003) ("*Rosenthal II*"). The court found Rosenthal eligible for safety-valve relief pursuant to United States Sentencing Guidelines § 5C1.2, entitling him to a sentence below the mandatory five-year minimum. *See id.* at 1097. The court departed downward by ten levels based on the determination that Rosenthal honestly and reasonably believed he was not disobeying federal law given the promises made by Oakland officials. *See id.* at 1098-100. Rosenthal was sentenced to three concurrent sentences of one day, with credit for time served.

## II

Rosenthal raises a claim of immunity pursuant to 21 U.S.C. § 885(d), challenges to the district court's evidentiary rulings and instructions regarding argument, claims of prosecutor and juror misconduct, and the denial of a *Franks* hearing.[4] The government cross-appeals, arguing that the district court erred in finding that Rosenthal was eligible for the "safety valve" and in departing from the minimum sentence to impose a single day of confinement.

## III

The district court issued a thorough and well-reasoned order articulating its basis for denying one of the evidentiary objections, the prosecutorial-misconduct claim, and the jury-

---

[4]Rosenthal originally raised an as-applied Commerce Clause challenge but abandoned it during oral argument in light of *Gonzales v. Raich*, 125 S. Ct. 2195 (2005) (upholding application of CSA to intrastate cultivation of marijuana plants for medicinal purposes).

instructions claim, *see Rosenthal I*, 266 F. Supp. 2d at 1079-82, 1085 n.5, and ruled on the other evidentiary issue and the *Franks* hearing issue orally. We agree with the district court's written and oral analysis of those issues and adopt its reasoning in whole. However, we reverse the district court on the jury-misconduct claim.

We independently review the question regarding immunity under 21 U.S.C. § 885(d) to underscore our holding that the provision does not apply to individuals, such as Rosenthal, who are involved with medical-cannabis dispensaries.

Finally, we dismiss as moot the government's cross-appeal challenging the length of the sentence.

## IV

**[1]** Rosenthal claims that he is immune from prosecution under 21 U.S.C. § 885(d). We review de novo a district court's decision to dismiss an indictment based on an interpretation of a federal statute. *United States v. Marks*, 379 F.3d 1114, 1116 (9th Cir. 2004), *cert. denied*, 543 U.S. 1170 (2005).

21 U.S.C. § 885(d) states, in full:

> Except as provided in sections 2234 and 2235 of Title 18 [relating to illegal procurement and execution of search warrants], no civil or criminal liability shall be imposed by virtue of this subchapter upon any duly authorized Federal officer lawfully engaged in the enforcement of this subchapter, or upon any duly authorized officer of any State, territory, political subdivision thereof, the District of Columbia, or any possession of the United States, who shall be lawfully engaged in the enforcement of any law or municipal ordinance relating to controlled substances.

Rosenthal argues that he was "lawfully engaged in the enforcement" of the Oakland Ordinance by ensuring legal distribution of marijuana to seriously ill Californians. Moreover, he notes that Oakland officials encouraged him to participate in the distribution of medical marijuana, deputized him to perform that function, and promised, in writing, his immunity from liability. For these reasons, Rosenthal claims he was a "duly authorized officer" of the City of Oakland and immunized by § 885(d).

**[2]** We agree with the district court that cultivating marijuana for medical use does not constitute "enforcement" within the meaning of § 885(d). *See Rosenthal I*, 266 F. Supp. 2d at 1078. As the district court noted, "enforcement" means "to compel compliance with the law . . . . At best, Rosenthal was implementing or facilitating the purpose of the statute; he was not compelling anyone to do or not to do anything." *Id. Kama* is not inconsistent with such a theory. In that case, the state law *mandated* the return of marijuana to the individual from whom the marijuana had been seized, and therefore the officers in question were "enforcing" the state law that *required* them to deliver the marijuana to that individual because he had a state-law right to its return. 178 Or. App. at 564-65. Here, in contrast, the state law does not give any person a right to *obtain* medical marijuana from any particular source, and the Oakland Ordinance does not mandate that Rosenthal manufacture marijuana.

We also agree with the district court's conclusion that Rosenthal's interpretation of the immunity provision contradicts the purpose of the CSA. *Rosenthal I*, 266 F. Supp. 2d at 1078-79. We note, as well, Rosenthal and the OCBC's intimate knowledge of the district court's previous orders, which rejected any claim that cannabis dispensaries were immune from federal anti-drug laws. *See supra* Section I.B.

**[3]** In conclusion, we reject the premise that an ordinance such as the one Oakland enacted can shield a defendant from

prosecution for violation of federal drug laws. Rosenthal cannot avail himself of the immunity provision of § 885(d).

## V

Rosenthal next contends that the court erred in refusing to grant a new trial after it became aware that one of the jurors (to whom we will refer as "Juror A") sought advice from an attorney on the eve of rendering a verdict. The district court, upon conducting a hearing into the matter, concluded that Rosenthal failed to demonstrate prejudice and denied the motion for a new trial. We find that the district court applied an overly burdensome standard of proof and that, under the appropriate standard of review, prejudice is evident.

## A

Denial of a motion for a mistrial based on juror misconduct is reviewed for abuse of discretion. *United States v. Mills*, 280 F.3d 915, 921 (9th Cir. 2002). Although this is an "extremely deferential standard," *see United States v. Martinez-Martinez*, 369 F.3d 1076, 1081-82 (9th Cir.), *cert. denied*, 543 U.S. 1013 (2004), the scenario changes where, as here, we consider whether the district court applied the appropriate legal standard to guide its prejudice determination. *See Suzy's Zoo v. Comm'r*, 273 F.3d 875, 878 (9th Cir. 2001) (stating that "[a] mixed question of law and fact exists when primary facts are undisputed and ulitmate inferences and legal consequences are in dispute"). Because we review a question of law, we apply de novo review.

## B

**[4]** Our juror-misconduct precedents "distinguish between introduction of 'extraneous evidence' to the jury, and *ex parte* contacts with a juror that do not include the imparting of any information that might bear on the case." *Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Serv. Co.*, 206 F.3d 900, 906 (9th Cir.

2000). Extraneous-evidence cases involve not only the intro-duction of "evidence" per se but the "submission of 'extrane-ous information' (e.g., a file or dictionary) to the jury." *United States v. Madrid*, 842 F.2d 1090, 1093 (9th Cir. 1988). *Ex parte* contacts, by contrast, generally do "not pertain to 'any fact in controversy or any law applicable to the case.' " *Id.* (citing *Rushen v. Spain*, 464 U.S. 114, 121 (1983) (per curiam)).

Where *ex parte* communication is involved, the district court, upon finding a reasonable possibility of prejudice, must hold a fair hearing. *See Madrid*, 842 F.2d at 1094. At the hearing, the defendant generally must demonstrate "actual prejudice," without which a new trial is not warranted.**[5]** *Id.* at 1093; *see also Sea Hawk Seafoods*, 206 F.3d at 906 (noting that, where *ex parte* contacts are involved, the defendant will receive a new trial only if the court finds "actual prejudice" to the defendant).

[5] Extraneous-information cases, by contrast, call for more searching review; we grant a new trial if "there is a reasonable possibility that the material could have affected the verdict." *Id*. Unlike *ex parte* cases, we generally place the burden "on the party *opposing* a new trial to demonstrate the absence of prejudice." *Id.* (emphasis added). Although the presence of extrinsic material does not always require a new trial, *compare United States v. Bagley*, 641 F.2d 1235, 1241 (9th Cir. 1981) (holding that extrinsic material regarding witness's immunity placed before jury was not prejudicial), *with United States v. Vasquez*, 597 F.2d 192, 193-94 (9th Cir. 1979) (hold-ing that file containing inadmissible extrinsic material left in jury room for four hours was prejudicial), we carefully review

---

**[5]**In *Sea Hawk Seafoods*, we noted an exception in cases of inherently coercive *ex parte* contact. *See* 206 F.3d at 906 ("[a]n *ex parte* remark may in some circumstances merit a rebuttable presumption of prejudice because of its inherently coercive effect, as where a judge instructs a juror *ex parte* regarding the verdict . . . .").

the circumstances and nature of the material to ensure that jurors deliberate without undue outside pressure or influence.

## C

The district court determined that because the attorney-friend "was not asked about and did not comment upon any of the facts in the case nor opine on the applicable substantive law," this case involved *ex parte* contact. *Rosenthal I*, 266 F. Supp. 2d at 1088-89. As an *ex parte* case, the district court required that Rosenthal demonstrate "actual prejudice" to secure a new trial. *Id*. at 1089.

Unlike the district court, we see the conversation between Juror A and legal counsel as involving extraneous information, not *ex parte* contact. Moreover, we find that the government has failed to demonstrate that there is no "reasonable possibility" of prejudice.

Juror A believed that the district court's instruction not to discuss the case with anyone would not rule out a conversation "about a point of law"; accordingly, she phoned up an attorney-friend to ask "if [she] had to follow the Judge's instructions, or if [she] had any leeway at all for independent thought." The attorney-friend responded that Juror A "definitely did have to following [sic] the Judge's instructions, and that there was absolutely nothing else [she] could do." When Juror A pressed the attorney, asking how there could ever be hung juries, she was told "that could only happen if the Judge gives the jury some leeway in his instructions." The attorney "then said [Juror A] could get into trouble if [she] tried to do something outside those instructions."

Juror A discussed the matter with another juror, who shared her own confusion with Juror A "whether a jury really has to reach a verdict solely based on the law." After the conversa-

tion with the attorney-friend, Juror A informed this second juror that they had to follow the judge's instructions.[6]

## D

**[6]** We see the communication between Juror A and the attorney-friend as raising an instance of extraneous evidence, not *ex parte* contact. The circumstances involve the "submission of 'extraneous *information*' " regarding the "law applicable to the case." *Madrid*, 842 F.2d at 1093 (emphasis added) (second set of internal quotation marks omitted). The communication, tantamount to a substantive legal discussion, is akin to the definition of "intent" or the distinctions between various degrees of murder. This case thus triggers an inquiry into whether there is a "reasonable possibility" that the extraneous information affected the verdict. On that question, we hold that, here, the communication was an improper influence upon Juror A's decision to acquit or convict.

**[7]** Jurors cannot fairly determine the outcome of a case if they believe they will face "trouble" for a conclusion they reach as jurors. The threat of punishment works a coercive influence on the jury's independence, and a juror who genuinely fears retribution might change his or her determination of the issue for fear of being punished.[7] Not only is there a "reasonable possibility" of prejudice, but the government has not succeeded in rebutting the presumption that a new trial is warranted. Accordingly, we reverse the district court and order a new trial.

---

[6]During the district court's evidentiary hearing into prejudice, Juror A refused to testify on Fifth Amendment grounds. The testimony of both jurors, with the government's consent, was provided by way of declarations.

[7]Although we understand the district court's concern that it not legitimate or contribute to any effort by a juror to engage in nullification, we do not think the court was ever in a position to do so since the evidentiary hearing involved juror misconduct, which is the focus of concern here.

## VI

Because we reverse the district court and order a new trial, we need not address the government's cross-appeal regarding the district court's imposition of a one-day sentence.[8]

## VII

We reverse this case for a new trial due to juror misconduct. We also hold that Rosenthal may not invoke the immunity provision of 21 U.S.C. § 885(d). Finally, we dismiss as moot the government's appeal of the district court's sentencing determination.

**REVERSED AND REMANDED.**

---

[8]We note that, in the wake of the Supreme Court's holding that we apply a "reasonableness" review to sentencing decisions, *see United States v. Booker*, 543 U.S. 220, 261 (2005), we would not be inclined to disturb the court's reasoned analysis underlying its sentencing determination.