NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff-Appellee,<br><br> v.<br><br>SVETLANA MARKEVICH,<br><br>       Defendant-Appellant. | No.   15-10457<br><br>D.C. No.<br>2:11-cr-00490-JAM-5<br><br>MEMORANDUM[*] |
| UNITED STATES OF AMERICA,<br><br>       Plaintiff-Appellee,<br><br> v.<br><br>IRINA MARKEVICH,<br><br>       Defendant-Appellant. | No.   15-10550<br><br>D.C. No.<br>2:11-cr-00490-JAM-1 |
| UNITED STATES OF AMERICA,<br><br>       Plaintiff-Appellee,<br><br> v.<br><br>ALEX MARKEVICH, | No.   15-10551<br><br>D.C. No.<br>2:11-cr-00490-JAM-2 |

       [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

                                        Defendant-Appellant.

UNITED STATES OF AMERICA,           No.    15-10552

            Plaintiff-Appellee,        D.C. No.
                                       2:11-cr-00490-JAM-4
    v.

DANIIL MARKEVICH,

            Defendant-Appellant.

UNITED STATES OF AMERICA,           No.    15-10558

            Plaintiff-Appellee,        D.C. No.
                                       2:11-cr-00490-JAM-3
    v.

ANATOLIY MARKEVICH,

            Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted February 5, 2019
San Francisco, California

Before:  THOMAS, Chief Judge, and PAEZ and BERZON, Circuit Judges.

    The five defendants in this case each obtained a mortgage loan in 2006 or

2007 from First Franklin Financial Corp., then one of the nation's largest subprime

mortgage lenders.  Much of the information the defendants told First Franklin

when applying for loans was false. For example, each defendant falsely represented that he or she would live at the house they were purchasing. Each defendant also drastically misrepresented his or her assets and monthly income, and provided First Franklin with fabricated documents to support these misrepresentations. Soon after the loans were originated, the defendants stopped making payments on the loans, and their properties were eventually foreclosed.

In 2011, the government charged the defendants with wire fraud under 18 U.S.C. § 1343. A jury convicted the defendants on all charged counts in May 2015. They raise four issues on appeal.

1. The defendants first argue that the district court improperly excluded proffered testimony by two experts, William Black and Henry Pontell. *United States v. Lindsey*, a decision that post-dates the trial in this case, sets forth a "bright-line rule" for the admission and exclusion of expert testimony regarding the materiality of false statements made during mortgage fraud schemes. 850 F.3d 1009, 1017 (9th Cir. 2017). Under *Lindsey* a defendant cannot offer expert testimony on a specific lender's behavior to disprove the materiality of a defendant's false statements, *id.* at 1018, but a defendant can offer evidence of "lending standards generally present in the industry," *id.*, to prove that a defendant's misstatements were not "capable of influencing" a lender's decision to originate a loan. *Id.* at 1015.

Under this standard, some of the proposed expert testimony should have been admitted. Although the defendants indicated that Black and Pontell would have testified as to First Franklin's lending practices during the period when the defendants obtained their mortgages, the defendants also indicated that Black and Pontell would have testified as to the generally applicable lending standards in the mortgage industry at the time of the indictment. And because the government sought to establish that the defendants' statements were material by showing that they could have influenced First Franklin's decision to fund the loan, Black and Pontell's proffered testimony regarding the First Franklin's lending practices likely should have also been admitted in this case. *See id.* at 1019.

But this error was harmless.[1] The defendants attempted to introduce Black and Pontell's testimony regarding lending standards to show that the defendants' false statements were not material. Black and Pontell would have testified that First Franklin and other subprime lenders knew that borrowers were providing them false representations as part of their mortgage loan applications and made no effort to test the validity of those representations.

This testimony suggests that many lenders did not care whether applicants provided truthful statements about their intent to occupy the mortgaged property,

---

[1] We need not determine whether the *Chapman* standard for harmless error or a less stringent standard applies, as this error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 23 (1967).

their income, and their assets. But it does not suggest that lenders would fund a loan even if an applicant omitted that misrepresentation. In the world of mortgage financing during the mid-2000s, a borrower's representations could influence a decision to fund a loan even if a lender recognized that those representations could be false, or did not care whether or not they were. In testimony submitted by the defendants, for example, Black stated that where a loan application originally stated the applicant made $16,741 in monthly income, instead representing that the applicant in fact made $4,000 in monthly income would "tend to prevent the funding of the loan." Thus, if the jurors accepted Black and Pontell's understanding of the mortgage financing industry during this time period, the jurors would still have to conclude that the defendants' misrepresentations were material.

2. The defendants also argue that the district court abused its discretion and violated the defendants' Confrontation Clause rights by preventing them from cross-examining Vivian Hansen, a former First Franklin employee called by the government. The government relied on Hansen's testimony to establish that certain representations in a loan application, such as a borrower's assets and income, would influence First Franklin's decision to fund a loan.

The district court abused its discretion and violated the defendants' Confrontation Clause rights by severely restricting the defendants' ability to probe

5

Hansen on cross-examination. Even though the government elicited extensive testimony from Hansen about First Franklin's lending standards to establish the materiality of the defendants' misrepresentations, the district court prevented the defendants from cross-examining Hansen about how First Franklin actually operated. By "prohibit[ing] *all* inquiry into" a central subject of Hansen's testimony, *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986), the district court denied the defendants the opportunity to effectively cross-examine Hansen.

But, as with the district court's erroneous exclusion of expert testimony, this error was harmless. There is simply no doubt that the defendants would not have received the loans originated by First Franklin had they truthfully represented their lack of intent to occupy the purchase properties, and accurately represented their assets and income. Thus, further cross-examination of Hansen could not have changed the jury's determination that the defendants' misrepresentations were material.[2]

3. The defendants also assert that the district court improperly denied a

---

[2] Take, as one example, the defendants' false representations that they planned to live at the purchased homes. The defendants received mortgages for approximately the full value of these properties. They would not have received such large mortgages had they not misrepresented their intent to occupy the homes. Hansen testified that First Franklin only provided mortgages for the full value of a home to borrowers who attested that they would be living in the home; otherwise, First Franklin would only offer loans up to 80 percent of the property's value. And the defendants have offered no reason to believe any cross examination would have undermined this portion of Hansen's testimony.

6

motion for a mistrial after Alex Markevich's paralegal spoke to one of the jurors in a courthouse elevator during a lunch break. "'We review alleged jury misconduct independently, in the context of the entire record' but 'accord substantial weight to the trial judge's conclusion as to the effect of alleged juror misconduct.'" *United States v. Stinson*, 647 F.3d 1196, 1216 (9th Cir. 2011) (quoting *United States v. Madrid*, 842 F.2d 1090, 1092 (9th Cir.1988)).

The district court responded to this ex-parte communication appropriately. Because the discussion between the paralegal and the juror was improper and "possibly prejudicial," the court correctly held a hearing to determine whether the exchange was prejudicial to the defendants. *Godoy v. Spearman*, 861 F.3d 956, 967 (9th Cir. 2017) (en banc) (quoting *Mattox v. United States*, 146 U.S. 140, 150 (1892)). After that hearing, the district court properly concluded that there was "no reasonable possibility that the communication . . . influenced the verdict," *id.* at 968, or "materially affected" the deliberations, *United States v. Dutkel*, 192 F.3d 893, 899 (9th Cir. 1999), as each juror stated that he or she could remain impartial and decide the case based on the evidence alone.

4. Defendant Irina Markevich also challenges the district court's decision to admit her joint tax return with her husband, Veniamin Markevich, under the public records exception to the rule against hearsay. The district court abused its discretion by admitting these returns under the public records exception. Tax

7

returns are not made by a public office; they are made by the person who filed the return or that person's agent. *Greenbaum v. United States*, 80 F.2d 113, 125 (9th Cir. 1935); Fed. R. Evid. 803 advisory committee's note to 2014 amendment.

Although the government argued only that the tax returns were admissible as a public record, the returns were almost certainly admissible as opposing party admissions under Federal Rule of Evidence 801(2). *See Greenbaum*, 80 F.2d at 125. Regardless, if any error occurred, it was harmless, as there was other uncontroverted evidence establishing that Irina Markevich's stated monthly income of $35,000 was wildly inaccurate.

**AFFIRMED.**